IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>WILLIAM BARNETT,<br>*Defendant* | Criminal Action No. ELH-13-0261 |

**MEMORANDUM**

On May 4, 2020, William Barnett, then pro se, filed an "Emergency Motion for Reduction of Sentence under 18 U.S.C. § 3582(c)(1)(A)." ECF 112. Through appointed counsel, Barnett supplemented the motion (ECF 117) and submitted several exhibits. I shall refer to ECF 112 and ECF 117 collectively as the "Motion." The government opposes the Motion. ECF 119. Barnett has replied. ECF 121.

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall deny the Motion.

**I.     Background**

On May 23, 2013, a grand jury sitting in the District of Maryland returned an indictment against Barnett and two others, charging them with conspiracy to distribute 500 grams or more of a substance containing cocaine, in violation of 21 U.S.C. § 846 (Count One), and possession with intent to distribute 500 grams or more of a substance containing cocaine (Count Two), under 21 U.S.C. § 841(a)(1). ECF 1.

Pursuant to a Plea Agreement (ECF 35), on September 18, 2013, Barnett entered a plea of guilty to both counts. ECF 34. The plea was tendered to Judge William D. Quarles, Jr., to whom the case was then assigned. The case has been reassigned to me due to the retirement of Judge Quarles.

The Plea Agreement included a factual stipulation. *See* ECF 35, ¶ 6(a). According to the stipulation, from 2012 through January 2013 the defendant conspired with others to obtain and distribute heroin, cocaine, and cocaine base. *Id.* A search of the defendant's vehicle on January 14, 2013, led to the recovery of at least 500 grams of cocaine. *Id.*

The Presentence Report ("PSR," ECF 42) indicated that the defendant had a final offense level of 31. *Id.* ¶ 23. His base offense level would have been 26 (*id.* ¶ 20), but it increased to 34 because the defendant qualified as a career offender. *Id.* ¶ 21. He had eleven criminal history points (*id.* ¶¶ 42, 43), which equates to a criminal history category of V. *Id.* ¶ 44. However, because of the defendant's career offender status, his criminal history category jumped to VI. *Id.* ¶ 45. The defendant's advisory guidelines called for a sentence ranging from 188 to 235 months of incarceration. *Id.* ¶ 58.

In addition, the PSR noted that the defendant, who was then 34 years of age, ECF 42 at 1, was 5 feet 8 inches tall and weighed about 438 pounds. *Id.* ¶ 76. He also had high blood pressure, for which he took medication, and diabetes, which was controlled by diet. *Id.* ¶ 78. Moreover, in 1995, he was shot 16 times, all over his body. *Id.* ¶ 77.

Sentencing was held on December 3 2014. ECF 57. Judge Quarles sentenced the defendant to 151 months of imprisonment, with credit from May 24, 2013. ECF 58 (Judgment).

The defendant, who is now almost 42 years of age (ECF 117-5 at 4), has served about 85 months of his sentence, *i.e.*, more than half. He is incarcerated at the low security satellite camp at FCI Schuylkill in Pennsylvania. ECF 117-5 at 3-4. Defendant has a projected release date of February 11, 2024. *Id.*

In April 2020, Barnett requested compassionate release from the Warden of FCI Schuylkill. ECF 117-3. The request was denied on May 19, 2020. *Id.* at 3. The Motion followed.

Additional facts are included, *infra*.

## II.     Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. Section 3582 was adopted as part of the Sentencing Reform Act of 1984. It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief. *See*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying motion for compassionate release because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished. BOP rarely filed motions on an inmate's behalf. As a result, compassionate release was exceedingly rare. *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. 115-391, 132 Stat. 5239 (2018).

As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13. The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under § 3582. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

### III.  COVID-19[1]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, ___ F. Supp. 3d CCB-20-1130, ___ F. Supp. 3d ___, 2020 WL 2556496, at *1 (D. Md. May 20, 2020).  That crisis is COVID-19.[2]  The World Health Organization declared COVID-19 a global pandemic on March 11, 2020.  *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic."  *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases).  Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic.  *Id.*

That said, the COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918.  *See United States v. Hernandez*, ___ F. Supp. 3d ___, 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration.").  Indeed, the pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, ___ Fed. App'x ___, 2020 WL 3100187 (6th Cir. June 11, 2020).  And, the Court is mindful that the virus is highly contagious.  *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh.

---

[1] The Court may take judicial notice of matters of public record.  *See* Fed. R. Evid. 201.

[2] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19.  *Antietam Battlefield*, 2020 WL at 2556496, at *1 n.1 (citation omitted).

Many people who are stricken with the virus experience only mild or moderate symptoms. But, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted). As of August 14, 2020, COVID-19 has infected about 5.3 million Americans and caused over 168,000 deaths in this country. *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Aug. 14, 2020).

Unfortunately, there is currently no vaccine, cure, "or proven effective treatment" that is available. *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted). Moreover, according to the Centers for Disease Control and Prevention ("CDC"), certain risk factors increase the chance of severe illness. Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system. *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020, the CDC revised its guidance. Then, on July 17, 2020, to reflect the most recently available data, the CDC again revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (July 17, 2020), https://bit.ly/38S4NfY. According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; and Type 2 diabetes.

6

The CDC has also created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include cerebrovascular disease, hypertension, pregnancy, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, smoking, and Type I diabetes. *See id.* Moderate to severe asthma is an underlying medical condition that was moved to the new category by the CDC; it is now identified as a condition that "might" put an individual at higher risk for COVID-19 complications. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020). Social distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2. Prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id.*; *see also Cameron*, 2020 WL 2569868, at *1. They are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19. The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at *2. Notably, as the government points out, the BOP has implemented substantial measures to thwart and mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected. *See* ECF 119 at 5-7. Indeed, in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the Third Circuit recognized the BOP has made "extensive and professional efforts to curtail the virus's spread."

Moreover, Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). According to the government, between March 26, 2020 and July 8, 2020, the BOP placed 4,619 inmates on home confinement. ECF 119 at 8 n.6.

On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite

8

emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9. The April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

The country has seen a recent surge in coronavirus cases. And, as with the country as a whole, the virus persists in penal institutions.[3] As of August 23, 2020, the BOP reported that 1,485 inmates and 627 BOP staff currently tested positive for COVID-19; 10,272 inmates and 870 staff have recovered; and 116 inmates and one staff member have died from the virus. *See* https://www.bop.gov/coronavirus/ (last accessed Aug. 24, 2020). *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1.

Notably, as of August 3, 2020, there was only one reported infection among the 873 inmates at FCI Schuylkill, a medium security correctional institution. *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1; ECF 119 at 8. But, there are only 166 inmates at the camp, which is where defendant is housed. And, there were zero active cases at the camp as of July 21, 2020. *See* ECF 119 at 8.

### IV. Discussion

The defendant urges the Court to reduce his sentence to time served under 18 U.S.C. § 3582(c)(1)(A)(i), on the ground that his medical conditions constitute an extraordinary and compelling basis for his release. In particular, Barnett is morbidly obese. As of April 13, 2020, he weighed 385 pounds and is only 5'7" tall. ECF 117-1 at 1. His BMI is "an astounding 60.3," which is considered "'extreme' obesity." ECF 117 at 6 (citation omitted). He also has chronic high blood pressure and has been treated with medication for years. ECF 117-4.

---

[3] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country. Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2.

The government concedes that morbid obesity has been identified by the CDC as a risk factor for severe illness from COVID-19. ECF 119 at 9. Moreover, the government recognizes that the defendant qualifies for release on this basis. *Id.* at 10. But, the government contends that the defendant is a danger to the community under 18 U.S.C. § 3142(g), and also claims that the factors under 18 U.S.C. § 3553(a) militate against reducing the defendant's sentence. *Id.* at 10-11.

The CDC now considers obesity with a BMI above 30 to be a risk factor for COVID-19 complications. In addition, the CDC advises that hypertension increases the risk of severe illness from COVID-19. The defendant has regularly taken blood pressure medication. Moreover, the CDC cautions that the "more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

Numerous courts have found that, in light of the COVID-19 pandemic, chronic medical conditions, including obesity and hypertension, qualify as a compelling reason for compassionate release. *See United States v. Readus*, No. 16-20827-1, 2020 WL 2572280, at *3 (E.D. Mich. May 21, 2020) ("Courts have found that the combination of prediabetes and obesity have been sufficient to warrant release"); *see also, e.g., United States v. Williams*, PWG-19-134, 2020 WL 3073320 (D. Md. June 10, 2020) (finding obese defendant with a BMI of 32.5 qualified for compassionate release given COVID-19); *United States v. Hilow*, No. 15-170-JD, 2020 WL 2851086, at *4 (D. N.H. June 2, 2020) (involving asthma, migraines, hypertension, high cholesterol, prediabetes, and borderline obesity); *United States v. Zuckerman*, 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (finding defendant's age, diabetes, hypertension, and obesity satisfied an extraordinary and compelling reason); *United States v. Ullings*, 1:10-CR-00406, 2020

WL 2394096, at *4 (N.D. Ga. May 12, 2020) (finding defendant's age, hypertension, and obesity satisfied an extraordinary and compelling reason); *United States v. Foreman*, 3:19-CR-62 (VAB), 2020 WL 2315908, at *4 (D. Conn. May 11, 2020) (finding defendant's age, hypertension, and obesity satisfied an extraordinary and compelling reason); *United States v. Quintero*, 08-CR-6007L, 2020 WL 2175171, at *1 (W.D.N.Y. May 6, 2020) (finding defendant's diabetes, compromised immune system, obesity, and hypertension satisfied an extraordinary and compelling reason).

In sum, I am satisfied that, given Barnett's various medical conditions, he satisfies the "extraordinary and compelling" prong of the § 3582 analysis. Therefore, I must next consider whether the defendant poses a danger to the community. And, I must consider the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A).

The government maintains that the defendant is a danger to the community because, *inter alia*, he is a drug trafficker and because he "is/was a high-ranking member of the BGF." ECF 119 at 10. Further, the government avers that the defendant participated in BGF meetings where violence was "openly discussed and approved . . . ." *Id.* As to the § 3553(a) factors, the government observes that the defendant is a career offender and he "has barely served half of his sentence." *Id.* at 11.

The gravity of the underlying offense cannot be minimized. Drug trafficking is a serious crime.

In addition, Barnett's prior record is noteworthy and of concern. When he appeared before the Court for sentencing, he qualified as a career offender. In 1999, at the age of 20, he pled guilty to conspiracy to commit murder, for which he received a suspended 25-year sentence. ECF 42, ¶ 29. The victim of the homicide was 32 years old. *Id.* ¶ 31. Less than two years later, Barnett

violated his probation and received a 12-year sentence. *Id.* In 2001, after a jury trial, the defendant was convicted of possession with intent to distribute cocaine. *Id.* ¶ 36. He received a sentence of 12 years' incarceration, concurrent with the sentence referenced in paragraph 29 of the PSR. *Id.* Also in 2001, he was convicted of distribution of cocaine. *Id.* ¶ 39. The sentence of 12 years was concurrent with the other sentences. *Id.* The defendant was mandatorily released in December 2008. *Id.* § 29.

According to the PSR, the government believed defendant was a member of the Black Gorilla Family ("BGF") gang. ECF 42, ¶ 72. Defendant did not dispute the assertion. *Id.* Rather, he said he "used to be affiliated with the gang [when he was] in the mid 20s . . . ." *Id.* However, he declined to comment further on his relationship to BGF. *Id.* And, the government points to the BGF affiliation in its opposition. However, the Court does not assign weight to the government's assertion concerning defendant's affiliation with BGF, because there is nothing in the record to support the assertion.

It is true that the defendant is now housed in a camp, which is a positive consideration. ECF 121 at 5. This suggests that he has complied with BOP rules.

Nevertheless, in my view, a reduction of the defendant's sentence to time served is not warranted, in light of the factors in 18 U.S.C. § 3142(g) and 18 U.S.C. § 3553(a). The defendant's underlying offense was a serious one. And, the Court is of the view that the defendant's release would pose a danger to the community, in light of his serious prior record and the facts pertinent to the underlying case. *See* 18 U.S.C. § 3142(g).

## V. Conclusion

For the foregoing reasons, I shall deny the Motion (ECF 112; ECF 117), without prejudice.

An Order follows.

Date: September 1, 2020

/s/
Ellen Lipton Hollander
United States District Judge