IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

WILLIAM BARNETT,
*Defendant*

Criminal Action No. ELH-13-0261

## MEMORANDUM

Defendant William Barnett, through counsel, has moved for early termination of his supervised release. ECF 139 (the "Motion"). The government opposes the Motion. ECF 141. Defendant has replied. ECF 142. According to the defendant, "US Probation does not oppose early termination." ECF 139 at 1; *see id.* at 4.[1]

No hearing is necessary to resolve the Motion. Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

### I. Background

On May 23, 2013, a grand jury sitting in the District of Maryland returned an indictment against Barnett and two others, charging conspiracy to distribute 500 grams or more of a substance containing cocaine, in violation of 21 U.S.C. § 846 (Count One), and possession with intent to distribute 500 grams or more of a substance containing cocaine (Count Two), under 21 U.S.C. § 841(a)(1). ECF 1. The conspiracy allegedly began in 2012. Barnett entered a plea of guilty to both counts on September 18, 2013. ECF 34. The plea was tendered to Judge William D. Quarles,

[1] The Court has never received a report from the probation officer as to the matter.

Jr., to whom the case was then assigned, pursuant to a Plea Agreement. ECF 35; *see also* ECF 36.[2]

The Plea Agreement included a factual stipulation. *See* ECF 35, ¶ 6(a). According to the stipulation, from 2012 through January 2013 the defendant conspired with others to obtain and distribute heroin, cocaine, and cocaine base. *Id.* A search of the defendant's vehicle on January 14, 2013, led to the recovery of at least 500 grams of cocaine. *Id.*

The Presentence Report ("PSR," ECF 42) indicated that the defendant had a final offense level of 31. *Id.* ¶ 23. His base offense level would have been 26 (*id.* ¶ 20), but it increased to 34 because the defendant qualified as a career offender. *Id.* ¶ 21. He had eleven criminal history points (*id.* ¶¶ 42, 43), which equates to a criminal history category of V. *Id.* ¶ 44. However, because of the defendant's career offender status, his criminal history category was elevated to VI. *Id.* ¶ 45. The defendant's advisory sentencing guidelines ("U.S.S.G." or "Guidelines") called for a sentence ranging from 188 to 235 months of incarceration. *Id.* ¶ 58.

The PSR (ECF 42) reflects that in September 1999, defendant was sentenced to twenty-five years of imprisonment for conspiracy to commit first degree murder, with all but three days suspended, and probation. *Id.* ¶ 29. Defendant violated his probation by committing another crime, and he was sentenced on May 8, 2001, to twelve years of imprisonment, dating from November 2, 2000. *Id.* He was mandatorily released from imprisonment in December 2008. *Id.* Supervision expired in November 2012. *Id.*

On March 7, 2001, following a jury trial, defendant was convicted of possession with intent to distribute cocaine. *Id.* ¶ 36. He was sentenced on May 8, 2001, to twelve years of imprisonment,

[2] The case was reassigned to me in June 2016, due to the retirement of Judge Quarles. *See* Docket.

dating from November 2, 2000, concurrent with the sentence referenced in ¶ 29. *Id.* ¶ 36. He was mandatorily released in December 2008, and parole supervision expired in November 2012. *Id.*

In addition, in March 2001, defendant pleaded guilty to distribution of cocaine and conspiracy and received another concurrent sentence of twelve years of imprisonment. *Id.* ¶ 39. He was mandatorily released in December 2008. *Id.* He was on parole supervision through November 2, 2012. *Id.*

Sentencing in this case was held on December 3, 2014. ECF 57. Judge Quarles sentenced the defendant to 151 months of imprisonment, with credit from May 24, 2013, and to a five-year term of supervised release. ECF 58 (Judgment); ECF 135.

In mid 2020, Barnett moved for compassionate release. ECF 112, ECF 117; ECF 121. The government opposed the motion. ECF 119. It maintained that the defendant posed a danger to the community because, *inter alia*, he is a drug trafficker and because he "is/was a high-ranking member of the BGF." *Id.* at 10. Further, the government averred that the defendant participated in BGF meetings where violence was "openly discussed and approved . . . ." *Id.* As to the factors under 18 U.S.C. § 3553(a), the government observed that the defendant is a career offender and he "has barely served half of his sentence." *Id.* at 11.

By Memorandum and Order of September 1, 2020 (ECF 122, ECF 123), I denied defendant's compassionate release motion. I concluded that, because of defendant's various medical conditions, he satisfied the "extraordinary and compelling" prong of the 28 U.S.C. § 3582 analysis. ECF 122 at 11. Nevertheless, I reasoned, *id.* at 11-12:

> The gravity of the underlying offense cannot be minimized. Drug trafficking is a serious crime.
>
> In addition, Barnett's prior record is noteworthy and of concern. When he appeared before the Court for sentencing, he qualified as a career offender. In 1999, at the age of 20, he pled guilty to conspiracy to commit murder, for which he received a suspended 25-year sentence. ECF 42, ¶ 29. The victim of the homicide

> was 32 years old. *Id.* ¶ 31. Less than two years later, Barnett violated his probation and received a 12-year sentence. *Id.* In 2001, after a jury trial, the defendant was convicted of possession with intent to distribute cocaine. *Id.* ¶ 36. He received a sentence of 12 years' incarceration, concurrent with the sentence referenced in paragraph 29 of the PSR. *Id.* Also in 2001, he was convicted of distribution of cocaine. *Id.* ¶ 39. The sentence of 12 years was concurrent with the other sentences. *Id.* The defendant was mandatorily released in December 2008. *Id.* § 29.
>
> According to the PSR, the government believed defendant was a member of the Black Gorilla Family ("BGF") gang. ECF 42, ¶ 72. Defendant did not dispute the assertion. *Id.* Rather, he said he "used to be affiliated with the gang [when he was] in the mid 20s . . . ." *Id.* However, he declined to comment further on his relationship to BGF. *Id.* And, the government points to the BGF affiliation in its opposition. However, the Court does not assign weight to the government's assertion concerning defendant's affiliation with BGF, because there is nothing in the record to support the assertion.
>
> It is true that the defendant is now housed in a camp, which is a positive consideration. ECF 121 at 5. This suggests that he has complied with BOP rules.
>
> Nevertheless, in my view, a reduction of the defendant's sentence to time served is not warranted, in light of the factors in 18 U.S.C. § 3142(g) and 18 U.S.C. § 3553(a). The defendant's underlying offense was a serious one. And, the Court is of the view that the defendant's release would pose a danger to the community, in light of his serious prior record and the facts pertinent to the underlying case. *See* 18 U.S.C. § 3142(g).

Mr. Barnett was released from the Bureau of Prisons in December 2023. ECF 135; ECF 139. In other words, he has completed almost 60% of his supervised release.

## II. Discussion

### A.

The defendant seeks early termination of his supervised release, claiming he "has substantially complied with his conditions of supervised release, reengaged with his family, and has maintained steady employment." ECF 139 at 3. He notes that he was allowed to travel to South Carolina for a family reunion. *Id.* (citing ECF 136). And, he points to the very favorable letter of support from his work supervisor at the Baltimore City Department of Public Works, where defendant is a solid waste driver. ECF 139-2.

The government contends that defendant's "previous adjustment to supervision requires the Court to decline the defendant's motion." ECF 141 at 2. It points out that the underlying case "followed the defendant's release in 2008 from a probation violation in a murder case and multiple State drug trafficking convictions." *Id.* According to the government, defendant's "pattern of recidivism mandates close supervision . . . ." *Id.* The government also posits that "[d]oing well" while on supervised release is the "expectation . . . ." *Id.* at 1.

In defendant's reply, he rejects any suggestion that "mere compliance" with conditions of supervised release cannot provide a basis for early termination. ECF 142 at 2; *id.* at n.1. Moreover, he maintains that the gravity of the underlying offense is not a ground to reject the Motion. *Id.* at 2. According to the defendant, "[t]he government pushes for an examination centered on the 'gravity of the underlying offense, which alone is an impermissible factor for the Court's consideration." *Id.* at 3 (citing 18 U.S.C. 3583(e); *United States v. Esteras*, 606 U.S. 185, 188 (2025)).[3]

In addition, defendant contends that there is no basis for the contention that defendant presents "a current danger." *Id.* at 4. In defendant's view, "the government's line of argument stresses the statutory framework." *Id.* In short, defendant posits that "his rehabilitation and readjustment to society are complete" and justify early termination of supervised release. *Id.*

**B.**

Supervised release is "a post-incarceration program intended 'to assist individuals in their transition to community life.'" *United States v. McLeod*, 972 F.3d 637, 641 (4th Cir. 2020) (quoting *United States v. Johnson*, 529 U.S. 53, 59 (2000)); *see Esteras*, 606 U.S. at 193; *Mont v.*

[3] The *Esteras* Court considered the matter in the context of violation and revocation of supervised release. It did not address early termination.

*United States*, 587 U.S. 514, 523 (2019). It "serves as a transitional period between incarceration and "freedom." *Rico v. United States*, 607 U.S. 609, 612 (2026); *see Mont*, 587 U.S. at 523.

Notably, "'the primary goal [of supervised release] is to ease the defendant's transition into the community after the service of a long prison term . . . or to provide rehabilitation to a defendant who has spent a fairly short period in prison . . . but still needs supervision . . . .'" *United States v. Lewis*, 90 F.4th 288, 294 (4th Cir. 2024) (citation omitted). Supervised release "essentially amounts to a *conditional* and *partial* release" from incarceration. *Id.* (emphasis in *Lewis*); *see Esteras*, 606 U.S. at 193.

Punishment is not "an appropriate reason" to impose supervised release. *Lewis*, 90 F.4th at 294. Rather, supervised release "fulfills rehabilitative ends, distinct from those served by incarceration." *Johnson*, 529 U.S. at 59. In determining whether to impose supervised release, its length, and the conditions, the court may not consider the factors in 18 U.S.C. § 3553(a)(2)(A) or § 3553(a)(3). *Esteras*, 606 U.S. at 192. Section 3553(a)(2)(A) concerns the need for the sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[.]" *Id.* Section 3553(a)(3) pertains to the kinds of sentences that are available. *Id.* And, a district court may revoke supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *see United States v. Mills*, 173 F.4th 182, 188 (4th Cir. 2026); *United States v. Patterson*, 957 F.3d 426, 435 (4th Cir. 2020).

The Motion implicates 18 U.S.C. § 3583(e)(1). It provides the District Court with authority to grant early termination of supervised release if, in the court's discretion, the relief is appropriate and in the interest of justice. It states:

> The court may, after considering the factors set forth in section 3553(a)(1),(a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) —

> (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice[.]

In sum, under 18 U.S.C. § 3583(e)(1), a court, after considering the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), may terminate a defendant's term of supervised release at any time after the expiration of one year of supervision, if the Court is "satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." *See United States v. Pregent*, 190 F.3d 279, 283 (4th Cir. 1999).

In assessing whether a defendant has met that burden, a court must consider:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics, 18 U.S.C. § 3553(a)(1);
>
> (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);
>
> (3) the kinds of sentence and sentencing range established for the defendant's crimes, § 3553(a)(4)(A);
>
> (4) pertinent policy statements issued by the United States Sentencing Commission, § 3553(a)(5);
>
> (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and
>
> (6) the need to provide restitution to any victims of the offense, § 3553(a)(7).

Effective November 1, 2025, the Guidelines were amended as to the imposition, modification, termination, and revocation of supervised release. Of relevance here, the Amendment created a new section, U.S.S.G. § 5D1.4. Section 5D1.4(b) provides:

> (b) EARLY TERMINATION.—Any time after the expiration of one year of supervised release and after an individualized assessment of the need for ongoing supervision, the court may terminate the remaining term of supervision and

> discharge the defendant if the court determines, following consultation with the government and the probation officer, that the termination is warranted by the conduct of the defendant and in the interest of justice. See 18 U.S.C. § 3583(e)(1).

The Commentary includes factors that a court may want to consider in determining whether early termination is appropriate:

> (B) **Early Termination.**—When determining whether to terminate the remaining term of supervised release under subsection (b), the court may wish to consider such factors as:
>
> (i) any history of court-reported violations over the term of supervision;
>
> (ii) the ability of the defendant to lawfully self-manage (e.g., the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges);
>
> (iii) the defendant's substantial compliance with all conditions of supervision;
>
> (iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision;
>
> (v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and
>
> (vi) whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant.

Here, defendant committed a very serious offense. The Plea Agreement contains a stipulation of facts that sets forth the gravity of the crime. Judge Quarles imposed a lengthy period of incarceration and five years of supervised release.

As noted, defendant has served almost three years of his five-year term of supervised release. In considering the Motion, the Court is not required to ignore defendant's history of recidivism, even when under supervision. Defendant received a very lenient sentence of twenty-

five years, with all but three days suspended, for murder conspiracy. It was followed by probation. Although defendant faced significant "back up time" of almost twenty-five years if he were to violate his probation, that did not deter him from committing other offenses. He violated his probation in that murder conspiracy case, and received a twelve-year sentence. Then, while on parole in several State cases, he committed the underlying federal offense.

**C.**

The Court's primary focus concerns 18 U.S.C. § 3553(a)(1). Public safety weighs heavily here. The Court also is of the view that there is a need to deter any future misconduct by defendant. This leads me to conclude that early termination of supervision is not appropriate at this time.

As I see it, continued supervision is crucial to assist defendant in maintaining his status as a law-abiding, productive member of the community. Moreover, supervised release is not unduly burdensome, particularly when I consider the defendant's history of recidivism.

Therefore, I shall deny the Motion, without prejudice to the right of defendant to renew the Motion at a later time. An Order follows.

Date: November 3, 2026

/s/
Ellen L. Hollander
United States District Judge